The defendant's motion to dismiss the complaint for want of jurisdiction will accordingly be denied.

Radamés Santiago **SCHMIDT**, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE**, Defendant.

Civ. No. 550–68.

United States District Court
D. Puerto Rico.
May 27, 1969.

---

6. See, also, Annotations 10 A.L.R.2d 290; 20 A.L.R.3d 1201; 23 A.L.R.3d 551.

Frank Torres, Ponce, P. R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## ORDER

FERNANDEZ-BADILLO, District Judge.

This is a civil action brought under the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare denying this 41 year old claimant a period of disability and the corresponding disability benefits. The Decem-ber 1966 application for disability benefits describes the impairments as hypertension, heart trouble and leg fracture and fixes August 22, 1966 as the date on which plaintiff became unable to work.

At the hearing, Santiago testified that he had third grade schooling,[1] could read and write fairly well and had worked as a cook and baker for twelve years in the National Guard, as janitor and messenger, house painter and finally as messenger for the Puerto Rico Communications Authority delivering telegrams on a motorcycle. He explained that his failure to return to work was due to shortness of breath which was brought on when he exerted himself. (Tr. 34–35).

The medical evidence on record reveals that in 1964 while delivering telegrams claimant was involved in two traffic accidents having suffered two broken ribs and a fractured right femur. On February 11, 1965 he was admitted in distress due to pain to the Dr. Pila Clinic having as chief complaint trauma of the right femur. Treatment on this occasion consisted of bedrest and traction until April 5, 1965 when he was released in an improved condition. The physical examination performed at said clinic reports normal blood pressure of 120/80, lungs clear and deformity and limitation of movement of the right thigh. A 1966 report of Dr. F. Grillasca of the State Insurance Fund concedes a 15% loss of physiological function of the right leg. On January 12, 1967 Dr. Martínez Oramas in another report of the State Insurance Fund diagnosed fracture of the right femur and arteriosclerotic heart disease with hypertension, further noting that the patient presented dyspnea on effort with palpitations. The prior 15% incapacity due to fracture was reaffirmed and an additional 20% loss of general physiological function was allowed. Plaintiff has been receiving $103.00 monthly from the

---

1. Though he initially alleged an eighth grade education at the hearing, Santiago claimed all he achieved was third grade and had misrepresented his education to obtain a job at the Communications Au-thority. Santiago was taken at his word and as a result the job of cashier was discarded among the employment opportunities available to plaintiff.

Commonwealth government on account of occupational disability. (Tr. p. 31).

On January 19, 1967 plaintiff was seen by Dr. Francisco C. Porrata, an internist with subspecialty in cardiovascular disease, at which time he underwent a thorough physical examination. X-rays of the chest and right femur revealed no active process at the lungs or pleura, heart and great vessels were of normal appearance and the fracture was healed with a moderate angulation. Dr. Porrata diagnosed chronic bronchial asthma, allergic rhinitis, hypertensive cardiovascular disease, obesity and a healed fracture causing limitation in flexion of the right knee joint. He described Santiago's condition stating that:

"No evidence of heart failure present on examination. The chest pain complained of has none of the characteristics of angina pectoris. It is my impression that according to the classification of heart disease of the American Heart Association this case is Class I (functional) Class B (therapeutic). Nevertheless this case has also chronic bronchial asthma. Pulmonary function tests should be done before his functional working capacity and prognosis is determined. He walks with a normal gait with a very slight 1 limp. Apparently cannot bend down more than eighty five per cent of the way and can flex the right knee joint only about one half of the way."

Claimant performed pulmonary function tests before Dr. René Bartolomei, allergist, on February 8, 1967. While the initial results were low there was marked improvement when the tests were repeated after the use of a bronchodilator. Dr. Bartolomei commented that this patient did not follow instructions and "in spite that the cooperation was inadequate, I might say that his present pulmonary condition is not bad and he may improve with good medical care."

Dr. Iguina Reyes, an orthopedic surgeon, observed that all of claimant's complaints "are referred to the cardiovascular system or to the right lower extremity" and reported that "orthopedically the rest of the body is among normal limits of function except the right lower extremity" which was described as "moderately severely handicapped." In his opinion plaintiff was unable to "walk or stand for very prolongued periods of time."

After the hearing claimant submitted a medical certificate dated December 16, 1967 of Dr. P. Berríos, specialist in preventive medicine, who treated patient at his home and reported an old fracture of the right leg, obesity, diabetes mellitus and malignant hypertension. This led to another complete physical examination on January 26, 1968 by Dr. Porrata who after taking an electrocardiogram, chest X-ray, blood tests and urinalysis made the following comments:

"No evidence of heart failure is present on examination. There is no cardiac enlargement. The chest pain he complained of has none of the characteristics of angina pectoris. It is again my impression that at the present time according to the classification of heart disease of the american heart association this case is class I (functional) class B (therapeutic). Pulmonary function tests have been done by Dr. René Bartolomei who came to the conclusion that his present pulmonary condition is not bad and that he may improve with good medical care. No musical rales were heard today on examination. He should also improve with proper treatment of the allergic rhinitis. None of the complications of diabetes mellitus are present on examination. This case has been evaluated by Dr. Iguina. The apparent slight difficulty in hearing present is not disabling. The prognosis in the long run is not good.

This case has at the present time only mild hypertension. I did not find any evidence of malignant hypertension on examination. His blood pressure today 1/26/68 is 140/100. On 1/19/67 the blood pressure was

135/100. In malignant hypertension there is an accelerated progression, there is papilledema of the fundus and as a rule the diastolic blood pressure is 130 mm. Hg or more. His systolic blood pressure today 1/26/68 is 140 mm. Hg which is only slightly elevated. I cannot tell whether he is receiving adequate treatment since he does not know the names of the medicines he is taking. Nevertheless it is my impression that he should improve with proper treatment. It is also my impression that reduction of weight should help both his hypertension and diabetes."

■ Plaintiff contends that his testimony at the hearing clearly indicates that he is entitled to receive benefits under the Act. He argues that the vocational expert's testimony was hearsay and the Examiner gave it undue credit. Subjective complaints are one of the elements to be considered in reaching a disability determination. "Subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment." Rodríguez v. Celebrezze, 349 F.2d 494 (1st Cir. 1965). In the recent case of Reyes Robles v. Finch, 409 F.2d 84, (1st Cir., 1969), the Court in referring to the subjective testimony of claimant observed: "Indeed if a claimant could, as a matter of law, overcome the effect of what would otherwise be substantial evidence of continued ability to work by his own testimony as to his condition, the Secretary would rarely if ever be justified in denying benefits."

■ In the instant case the Court is of the view that the Secretary's denial was supported by substantial evidence. It is apparent that claimant's condition does not seriously impair his capacity to engage in substantial gainful activity. A fair evaluation of his several ailments in combination does not justify a finding of disability.

■ The vocational expert testified that claimant could engage in sedentary activity [2] such as work in the shoe manufacturing and textile industries which are available in the Ponce area where claimant resides. "Although the claimant does not have the burden of negativing every possible job opportunity, the administrative agency has only to produce some evidence from which a finding can be made that the claimant can do some type of work. It does not have the duty of finding a specific employer and a specific job." Rodríguez v. Celebrezze, *supra*. The 1967 Amendments require neither that the vocational witness have personal knowledge of the nature and duties of the jobs existing in the national economy nor that he prove that specific job vacancies exist. Rose v. Cohen, 406 F.2d 753 (6th Cir. 1969); Huffman v. Gardner, 292 F.Supp. 331 (D.C.Or.1968); Wright v. Gardner, 403 F.2d 646 at 647 (7th Cir., 1968).

■ Finally we reach the question of a prior determination of disability by an agency of the Commonwealth government. It is well established that a finding of disability by a state court or agency is to be considered and is entitled to some weight in assessing plaintiff's condition, Vicars v. Gardner, 285 F.Supp. 527 (W.D.Va., 1968) but it is not controlling and the true inquiry is whether a physical or mental impairment as such renders a claimant unable to engage in substantial gainful activity. Nelms v. Gardner, 386 F.2d 971 (6th Cir., 1967). Such inquiry led to the conclusion that this plaintiff is fit under social security standards to engage in sedentary gainful occupation.

On review the Court finds that the administrative decision was supported by substantial evidence and accordingly it is ordered that the Motion of Plaintiff for Summary Judgment be and hereby is denied.

---

**2.** This finding was premised on the assumption that claimant had a "leg disability which prevented standing for prolonged periods and a heart condition that precluded more than moderate physical exertion."