Harry DIBBLE, Jr., Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 70–54.

United States District Court, W. D. Pennsylvania.

Sept. 24, 1970.

William F. Patterson, Green, Gibson & Abood, Johnstown, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

OPINION

GOURLEY, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The plaintiff filed application for a period of disability and for disability insurance benefits on December 8, 1964, alleging that he became unable to work on April 15, 1964. The Bureau of Disability Insurance determined that plaintiff was disabled under the 1965 Amendments to the Social Security Act from April 15, 1964 until July 19, 1965. Under the 1965 Amendments, plaintiff was thereby entitled to benefits through September of 1965 but said benefits also could not begin before September of 1965. Consequently, plaintiff received benefits for the month of September 1965.

Plaintiff requested and was granted a hearing on January 5, 1966. On April 27, 1966, the Hearing Examiner awarded plaintiff continuing disability benefits and he received these benefits until August of 1968, when the Bureau of Disability Insurance terminated the benefits

pursuant to 42 U.S.C.A. § 425.[1] Plaintiff requested a second hearing which was granted, and the Hearing Examiner rendered a decision on September 24, 1969 wherein he found that plaintiff was not entitled to disability insurance benefits subsequent to August of 1968. The Hearing Examiner's decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on November 18, 1969.

A Complaint was timely filed in the United States District Court for the Western District of Pennsylvania. In response defendant filed an Answer and a certified copy of the administrative transcript. Subsequently, defendant filed a Motion for Summary Judgment. A hearing has been conducted, and, upon review of the administrative record, the pleadings, and the arguments and briefs of counsel, the Court denies the Motion for Summary Judgment.

 Pertaining to the scope of judicial review, § 205(g), *supra*, provides as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

Under this section and § 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 706, the Court is limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957).

 Section 216(i) (1) (A) of the Act, as amended, 42 U.S.C.A. § 416(i)

(1) (A), provides that the term "disability" means:

" * * * inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *."

The definition of "disability" under § 223(d) of the Act, 42 U.S.C.A. § 423(d) (1) (A), as amended, is the same. In making a finding as to plaintiff's ability to engage in any substantial gainful activity, four elements of proof are to be considered: (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) plaintiff's age, educational background, and work history. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Stefero v. Gardner, 285 F.Supp. 898 (E.D.Pa. 1968); Dabravalskie v. Gardner, 281 F.Supp. 919 (E.D.Pa. 1968).

It was the finding of the Hearing Examiner that plaintiff, subsequent to a spinal fusion in 1964, suffered from a residual back impairment which rendered him disabled until June of 1968. As of June of 1968, plaintiff's condition was found to have improved to the point where, although precluded from arduous exertion, heavy lifting, prolonged stooping, prolonged bending and prolonged squatting, plaintiff was able to engage in sustained light activities with occasional bending, stooping or squatting. Numerous jobs of a light or sedentary nature and within the capabilities of plaintiff were found to exist in the region of plaintiff's residence.

Plaintiff is forty years of age, married, and the father of four children. He completed the seventh grade of school. From 1947 to 1950, plaintiff served in the United States Air Force where he

---

I. 42 U.S.C.A. § 425
*"Suspension of benefits based on disability.* If the Secretary, on the basis of information obtained by or submitted to him, believes that an individual entitled to benefits * * * may have ceased to be under a disability, the Secretary may suspend the payment of benefits * * * until it is determined * * * whether or not such individual's disability has ceased or until the Secretary believes that such disability has not ceased."

was a power shovel operator and supervised a section of construction equipment operators. For four years thereafter, he worked in coal mines primarily as a hand loader and mine electrician who hung wire and cable but did no electrical repairs. From 1954 until his disability began, plaintiff was employed as a civilian mechanic for the Pennsylvania National Guard, repairing heavy motor vehicles and driving a tractor-trailer.

In 1958, plaintiff injured his back while operating a vehicle. He began treatment with Dr. Silensky, an orthopedic surgeon, who treated him conservatively with a lumbosacral support. Plaintiff returned to work but reinjured his back in September of 1959 and was hospitalized. A myelogram revealed a ruptured disc and a laminectomy was performed. Plaintiff's condition improved and he returned and continued to work until April of 1964 when he again reinjured his back. At this time, plaintiff was again hospitalized and a spinal fusion was performed upon him by Dr. Silensky.

The medical evidence immediately following plaintiff's fusion is conflicting. Plaintiff was examined by Dr. Davison, an orthopedic surgeon, on February 19, 1965. Plaintiff complained of continuing low back disability. He was found in no acute distress. His gait was fairly normal. Patellar reflexes were equal and active. Achilles reflexes were decreased bilaterally. No sensory changes or motor weakness were found. Straight leg raising was normal. A review of X-rays indicated, however, an incomplete fusion or pseudoarthrosis. Dr. Davison was of the opinion that the condition was completely disabling and that plaintiff would not be symptom free until another fusion was performed.

The X-ray reports of radiologists Nido and Palmer on June 7, 1965 and June 8, 1965 indicated respectively that the fusion was unstable and that the spinal fusion and graft appeared fragmented and partially reabsorbed.

Dr. Trigiano, specializing in physical medicine and rehabilitation, examined plaintiff on June 7, 1965. Plaintiff complained of back pain which radiated down his right leg. Forward flexion could be performed without much difficulty but pain was experienced on hyperextension. Straight leg raising was fairly good except that a pulling was experienced over the lumbar spine area on 50–60 degrees extension. There was difficulty in obtaining the right ankle jerk which suggested a good possibility of pressure on nerve roots at L-4. Reports of X-rays suggested a disruption of the fusion. Physical therapy and a lumbo-sacral support was recommended.

Plaintiff was examined by Dr. Silensky on July 6, 1965. Plaintiff continued to have lumbosacral pain. However, Dr. Silensky found that he could walk well and erect. Motion in the lumbosacral area was found somewhat limited. Local tenderness to deep pressure was found at the incisional area. Straight leg raising was found normal on the right and left. Reflexes were found normal. The X-ray report of Dr. McAneny revealed lumbar bodies of a normal size with interspaces well preserved. The bone plate appeared firm and well established. It was concluded that the fusion was solid. Dr. Silensky considered plaintiff to be convalescing and no further surgery was contemplated. It was recommended that plaintiff be rehabilitated to work of a non-strenuous nature. He regarded plaintiff's prognosis to be good.

A specialist in psychiatry and neurology, Dr. Goshorn, examined plaintiff on February 21, 1966. Plaintiff complained of back pain radiating down the right leg. He was observed to be moderately uncomfortable sitting. It was observed that plaintiff had considerable pain in the lumbar area and in his legs, particularly the right leg. Dr. Goshorn concluded that either plaintiff was suffering from another ruptured disc or that the graft was not working well. He recommended examination and repair of the injury at one of two teaching hospitals. After such treatment, Dr. Goshorn believed plaintiff could get well and return to light work. After re-

viewing X-rays, he concluded plaintiff was not totally and permanently disabled, but it was recommended that he be examined by a neurosurgeon.

Dr. Tukanowicz, a specialist in neurological surgery, examined plaintiff on March 26, 1966. Observed was pain localized in the lower lumbar spine which tended to radiate into the right leg. Plaintiff was found never free of pain. Pain was constant with periods of increased intensity. A moderate degree of weakness was found in straight leg raising of right lower extremity. Straight leg raising was limited by severe pain to 10 degrees on the right. Knee reflexes were present and brisk. The right ankle reflex was found absent. Diminished sensitivity to pin prick was found over anterior outer aspect of the right side. An X-ray was found to show an unstable fusion. It was concluded that a picture of residual disc lesion was presented. To be considered were the possibility of recurrent disc lesion due to inadequate removal of the disc during the first operation, root irritation due to poor take-in of the spinal fusion and a lesion not located at the site of the previous operation. Recommended was hospitalization for a repeated myelogram and further care based upon the result of the same.

All of the aforementioned medical evidence was before the Hearing Examiner prior to his decision of April 27, 1966 wherein he determined that plaintiff remained disabled as of that time and was entitled to continuing disability benefits. In a file memorandum entered on the date of the decision, the Hearing Examiner stated that the opinion of Dr. Silensky, mitigating in favor of plaintiff's ability to return to work of light or sedentary nature, was overcome by the opinions of the four other specialists examining plaintiff. It was concluded that plaintiff's condition could be expected to continue for a long and indefinite time and that disability existed.

■ The question, then, is whether there was substantial evidence to support the finding of the Hearing Examiner in

September of 1969 that plaintiff's disability ceased as of June of 1968. The Court finds a lack of substantial evidence to this effect.

Subsequent to the Hearing Examiner's decision of April 1966, plaintiff remained under the care of Dr. Silensky. In June of 1966, plaintiff was observed by Dr. Silensky to have continued difficulty in the lumbar spine and radiation of pain into the left and right leg, aggravated by effort or lifting. Plaintiff was found able to flex within normal limits considering the fusion. Lateral bending was satisfactory. Hyperextension caused pain in the lumbar area radiating into both legs. Straight leg raising on right and left was within normal limits except that hamstring tightness was experienced on the last few degrees of flexion. Reflexes were found normal. An X-ray continued to show a solid fusion. Dr. Silensky concluded that plaintiff had reached maximum improvement and suffered a residual disability of fifty percent. It was suggested that plaintiff be carried at full disability for six more months and re-evaluated.

In a letter dated September 25, 1967, Dr. Silensky reported to the Bureau of Employee's Compensation of the Department of Labor that plaintiff could lift twenty-five pounds, and that he could bend and stoop. Heavy lifting was precluded but plaintiff was deemed employable.

Plaintiff's benefits were terminated on the basis of Dr. Silensky's examination of June 13, 1968. Essentially, Dr. Silensky's findings in this examination were similar to his previous findings. No atrophy of musculature was found. Reflexes were found normal. No anesthesia or paresthesia was found. Motion in the spine was found limited in all directions. Straight leg raising was to eighty degrees of normal but, on full excursion, plaintiff experienced hamstring tightness and pain in the low back. The X-ray report showed a solid fusion.

Plaintiff was examined on December 7, 1968 by a neuro-psychiatrist, Dr. Ryan, at the request of the Pennsylvania State

Agency. It was found that plaintiff was unable to walk on tiptoe with his right foot, there was unsteadiness on recovery from deep knee bends on the right side. A flexion weakness of the right ankle and toes was accompanied by a more slight weakness in extension of the right toes. Range of motion, muscle tone and strength was found adequate and symmetric in other respects in both the lower and upper extremities. An area of mild hypethesia upon pin prick was found along the medial thigh of the right leg.

Dr. Ryan found that plaintiff's complaint of pain was genuine but could not estimate the degree to which it interfered with the performance of work. Prior medical reports, he felt, lent support to possibility of continued vertebral disease and nerve root irritation in the area of the fusion. He concluded that plaintiff's condition was sufficient to interfere with ordinary work activities. Prognosis was fair. Home physical therapy was recommended.

At the hearing in July of 1969, Dr. Nugent, a neurosurgeon was called as an impartial medical expert. Dr. Nugent reviewed the entire medical record of plaintiff before the hearing. In being questioned about the possibility of nerve root involvement in plaintiff's condition, Dr. Nugent stated that objective evidence of it would be weakness of the muscles of the lower extremities along with related sensory deficits and reflex changes. Although Dr. Ryan found weakness of flexion in the right knee and sensory impairment in the inner aspect of the right leg, Dr. Nugent rejected this as evidence of nerve root involvement, in part, on the ground that with the kind of weakness involved a diminishing or absence of ankle reflex would be expected. It may be noted that a diminution and absence of ankle reflex, respectively, were found in the examination formerly conducted by Dr. Trigiano and Dr. Tukanowicz. Although no atrophy of the musculature appeared, Dr. Nugent acknowledged that plaintiff could have severe pain without such atrophy.

It was Dr. Nugent's conclusion that plaintiff should avoid heavy lifting, prolonged stooping, bending and squatting and work of the nature in which he previously was engaged. However, plaintiff was believed able to engage in light work of a sustained nature. Such work could include occasional bending, stooping and squatting.

Plaintiff testified at the hearing to constant pain. He takes a pain relieving pill, soma, once every six hours. He states that he is often kept awake at night from the tightening in his back. He performs no work around the house. He changes from a sitting to standing to lying position frequently. In a two-hour period, he will lie down for about twenty minutes. He watches television for ten to fifteen minutes and then stands. He sleeps on the first floor of his two story home.

Plaintiff has found his right leg to collapse upon him about once every three weeks while walking. He has attempted to mow a patch of lawn 15x20 yards but sustained activity of this nature builds up a tightening in his back, creates increased pain and renders him sleepless. Plaintiff can walk 300 feet to the back of his lot but cannot return without stopping except by aggravating his pain. When he travels in an automobile for any distance, his wife usually drives and the station wagon which he owns is prepared so that he can lie down during the trip.

Plaintiff finds that he can sit continually for ten to fifteen minutes and stand for fifteen to twenty minutes. Forty minutes of continual standing aggravates his pain. He cannot climb. He can squat but not bend. He believes he can lift ten pounds occasionally but no weight regularly.

There is no evidence in the record that plaintiff is considered a malingerer. In numerous disability interviews through September of 1968, plaintiff was observed to be in obvious pain. In all interviews and at the hearings before the Hearing Examiner, plaintiff has moved about uncomfortably in his seat

and in instances has changed to stand and move about. There is indication that plaintiff has been willing to participate in a rehabilitative program but that he has never been afforded the opportunity to participate in such a program.

In finding that disability had ceased as of July 1968, it is clear that the Hearing Examiner gave less than full weight to plaintiff's symtomatic complaints. Indeed, it was the testimony of the vocational expert that, if plaintiff's testimony were fully accepted, he would be unemployable. In finding that plaintiff's condition had improved, the Hearing Examiner necessarily afforded great weight to the reports of Dr. Silensky subsequent to April of 1966 and to the testimony of Dr. Nugent. Viewing the record as a whole, this evidence cannot be considered as substantial.

In rendering his 1966 decision, the Hearing Examiner discounted the 1965 findings of Dr. Silensky in the light of the findings of four other specialists indicating that plaintiff was disabled. In 1965, Dr. Silensky was of the opinion that plaintiff was "convalescing." Upon examinations of the plaintiff subsequent to the Hearing Examiner's decision of 1966, Dr. Silensky was of the opinion that "maximum improvement" had been attained and that plaintiff was "employable." However, the fact is that Dr. Silensky's objective findings remained essentially the same as those which he made upon his first examination of plaintiff subsequent to the fusion. Because there was no change in Dr. Silensky's objective findings, there is no apparent basis for Dr. Silensky's later opinion that plaintiff's condition had improved.

Futhermore, the opinion of Dr. Ryan basically supported the opinions of the four specialists upon whose judgment the Hearing Examiner relied in his original decision awarding disability. Dr. Nugent's opinion that plaintiff was able to engage in light work was founded, in part, on the absence of objective findings of nerve root involvement. Yet, the very diminution of ankle reflex which he found to be absent was observed by two of the specialists examining plaintiff earlier. Dr. Nugent also stated that if the fusion were found to be unstable within the year subsequent to the fusion, it was unlikely that the fusion would become more solid with the passage of time.

 Subjective evidence of pain and incapacity resulting from pain is one of the elements to be considered in reaching a determination of disability, but such evidence must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. Schmidt v. Secretary of Health, Education and Welfare, 299 F.Supp. 1315, 1318 (D.C.P.R.1969). In the instant case, there is considerable objective medical evidence supportive of plaintiff's complaints of disabling pain. It is clear that plaintiff's pain results from a residual impairment of plaintiff's back existing subsequent to a spinal fusion. Several specialists have found a possibility of nerve root involvement. It is conceded by Dr. Nugent that muscular atrophy need not exist for plaintiff to experience severe pain. Plaintiff has not been found to be a malingerer.

Although medical evidence was conflicting, there was sufficient medical evidence supportive of plaintiff's subjective complaints of pain to render those complaints credible. In these circumstances, plaintiff's burden of establishing disability has been met and the finding of the Hearing Examiner that plaintiff's disability ceased in June of 1968 is not supported by substantial evidence.

An appropriate order is entered.

## ORDER

Now, this 24th day of September 1970, defendant's Motion for Summary Judgment is denied and the case is remanded to the defendant Secretary with directions that the plaintiff be granted a period of disability and disability benefits for disability continuing subsequent to June of 1968.