Abe **ROBINSON**, Plaintiff,

v.

Elliot **RICHARDSON**, Individually and in his capacity as Secretary of Health, Education and Welfare, Defendant.

No. 72–C–1251.

United States District Court,
E. D. New York.

July 11, 1973.

William Doblin, New York City, for plaintiff.

Robert A. Morse, U. S. Atty., Brooklyn, N.Y., for defendant; by Michael F. Crawford, Brooklyn, of counsel.

ZAVATT, Senior District Judge.

The plaintiff herein, Abe Robinson, has instituted this action pursuant to § 205(g) of the Social Security Act, 42 U. S.C. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare (Secretary) denying his application for disability insurance payments. The plaintiff and the Government have moved for summary judgment pursuant to Rule 56 of Federal Rules of Civil Procedure. As required by 42 U.S.C. § 405(g), the Secretary has filed with this Court a certified copy of the transcript of the record of the proceeding before him, including the evidence upon which the findings and decision complained of by the plaintiff are based.

Plaintiff first applied for disability benefits on October 22, 1970, alleging that, due to a disability caused by bronchial asthma as of October 6, 1970, he was no longer able to work. This application was denied on May 21, 1971 on the ground that, although he met the earnings requirements of 42 U.S.C. § 416(i)(3), he did not meet the disability requirements within § 223(d) of the Social Security Act, 42 U.S.C. § 423(d), which provides:

"§ 423. Disability insurance benefit payments—Disability insurance benefits

(d) (1) The term 'disability' means —

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

(2) For purposes of paragraph (1) (A)—(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work . . . .

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

On July 8, 1971, plaintiff filed a request for reconsideration which was denied on September 8, 1971. The plaintiff requested and, on May 25, 1972, received a hearing before a hearing examiner. On June 26, 1972, the hearing ex-

aminer affirmed the prior denial of plaintiff's application. This became the final decision of the Secretary on August 2, 1972, when the Appeals Council affirmed the hearing examiner's decision. On September 27, 1972, within the sixty day period prescribed by 42 U.S.C. § 405, the plaintiff instituted the present action.

The record before the hearing examiner indicates that plaintiff was born in South Carolina on July 27, 1924; completed six years of schooling and can read and write a little; that, for the past 27 to 28 years, he has been employed as a longshoreman in New York City and that he was last employed on October 5, 1970, by International Terminal Operating Co. Plaintiff is presently receiving $70.00 per week compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. He has had no training in any other vocation. He lives in the downstairs apartment of a two family house which he owns, renting out the top floor apartment for $150.00 per month. He is married, has four children and drives an air-conditioned car about 3 or 4 days a week, averaging about 5,000 miles per year. Plaintiff testified that he has been wheezing and has had difficulty breathing for the past 18 years, with his condition worsening. He takes assorted medicines several times a day and uses suppositories when necessary. On October 5, 1970, plaintiff suffered an asthmatic attack and has not worked since. Plaintiff's condition is particularly acute in cold and hot weather.

### Medical Evidence

Plaintiff first received treatment for his asthma on November 12, 1952, when he visited Dr. Edward Rafkin. Dr. Rafkin has treated him monthly from that date until June 8, 1971. On March 22, 1971, Dr. Rafkin submitted a medical report in which he diagnosed plaintiff's condition as bronchial asthma and pulmonary emphysema. Although Dr. Rafkin has prescribed various medications for the plaintiff, no benefit has been derived from any of the treatments or the prescribed medicines. Dr. Rafkin noted, in his report, that plaintiff's chest showed inspiratory and expiratory ronchi, and that there was wheezing throughout both lungs, with crepitant rales and noises on every examination; that plaintiff suffers from coughing, shortness of breath, with pain in the chest. It was Dr. Rafkin's opinion that, on October 6, 1970, "he [the plaintiff] is too ill to perform any gainful occupation!"

Plaintiff was admitted at the Jewish Hospital emergency room on October 31, 1970, at which time he was having an asthmatic attack. Medication was prescribed for him and he was released. Plaintiff has received emergency treatment for acute asthmatic attacks on a number of occasions. Plaintiff had been treated at the I.L.A. Medical Center of New York regularly since November of 1968 to the date of the hearing. The reports from that Center indicate that plaintiff has asthma and that, on a number of occasions, he was wheezing badly. Medication was prescribed for him and it was determined that he was allergic to several substances.

Dr. Albert Sternbach, an internist, examined the plaintiff once, on April 21, 1971. His diagnosis indicated that plaintiff suffered from chronic bronchial asthma, hypertension and that there was a slight prominence of the left ventricle. At the time of this examination, plaintiff was in no acute distress. A spirogram, testing his pulmonary functions, was enclosed in Dr. Sternbach's report which indicated that the plaintiff, before bronchodilators were administered, had an 86% of predicted total vital capacity; 45% of one second forced expiratory volume; approximately 27% of maximum voluntary ventilation or maximum breathing capacity (43.2 liters/minute). See, 4 Gray's Attorneys' Textbook of Medicine ¶ 181.11, Table 6 at 181–97. After bronchodilators were administered, the plaintiff was found to have 95% of the predicted total vital capacity; 44% of the one second forced expiratory volume; about 32% of maxi-

mum voluntary ventilation or maximum breathing capacity (50.4 liters/minute). *Id.* It should be noted that the total vital capacity test is "not recommended for rating purposes, since result may be normal in those with severe respiratory impairment." 4 Gray's Attorneys' Textbook of Medicine ¶ 181.11, Table 1 at 181–92. The forced expiratory volume test and the maximum voluntary ventilation tests are highly recommended and valuable tests. *Id.*

Dr. Hyman Alexander, a specialist in pulmonary diseases, examined the plaintiff once, on June 2, 1971. Plaintiff indicated to him that he can walk 5 to 6 city blocks at a slow pace and that, because of shortness of breath, he has to stop after climbing 2 flights of steps. He wheezes constantly and produces scant sputum when he coughs. Dr. Alexander found scattered rhochi throughout both lungs. Pulmonary function studies by Dr. Alexander indicated 65% of predicted total vital capacity and 32% of one second forced expiratory volume. Dr. Alexander concluded that:

> "It is my opinion that the claimant has bronchial asthma and irritative bronchitis which are causally related to his occupation as a longshoreman. . . He is totally and permanently disabled for his usual work as a longshoreman. He is able to do sedentary work which would not bring him in contact with bronchial irritants and allergens. He is in need of medical treatment for an indefinite period of time."

Dr. William Wood, an allergist, testified before the hearing examiner on plaintiff's application for disability benefits. He testified that he has been seeing the plaintiff once a week since November 15, 1971, during which time he has been treating the plaintiff for advanced bronchial asthma, pulmonary emphysema and chronic obstructive lung disease; that plaintiff suffers from severe breathing difficulties, including shortness of breath with difficulty locomoting. Dr. Wood has supplied plaintiff with every conceivable medication, without any beneficial results. He testified that plaintiff cannot travel on subways or buses and that he would advise the plaintiff not to drive an automobile; that plaintiff would be best off in an air-conditioned environment and would be better off in a hospital; that, in his opinion, plaintiff should stay at home in inclement weather; that, in addition to asthma, plaintiff suffers from hypertension. Dr. Wood's treatment consists of every available remedy outside of hospitalization. At the office visits, he receives intramuscular subcutaneous and intravenous treatment. Dr. Wood testified that plaintiff might wind up in the hospital at any time. He totally disagreed with Dr. Sternbach's findings of a 95% capacity after bronchodilators because it was inconsistent with his own physical findings. Plaintiff is presently on bronchodilators which he takes in various modes, including suppositories. Dr. Wood testified that he has never seen the plaintiff when he was not in distress. His conclusion was that plaintiff was in a dangerous condition.

### Vocational Testimony

A vocational expert, Dr. Max Cooper, testified at plaintiff's hearing. It was his testimony that plaintiff has the ability to follow directions and instructions. He testified that there were certain sedentary or light types of jobs which involve a minimum of physical activity which the plaintiff could perform, notably: (1) work as a watchman; (2) elevator operator; (3) doorman; (4) hand packager in a drug or similar establishment. All of these jobs require no previous training. Sedentary jobs all involve a minimum of physical activity with walking and standing required only occasionally. The lifting of small objects never weighing more than 10 pounds would be required. Light jobs involve standing for 1 or 2 hours and the lifting of objects weighing less than 20 pounds. Dr. Cooper testified that these jobs were available in significant numbers in several regions of the country, including the New York metropolitan area.

On examination by plaintiff's attorney, Dr. Cooper admitted that it would be dangerous for plaintiff to operate an elevator during an asthmatic attack; that the selection of the permissible and available jobs was based on the assumption that plaintiff was capable of traveling to work by public transportation throughout the year, regardless of the weather, and that any of the plaintiff's work would have to be performed in an atmosphere free of dust and fumes. Dr. Cooper concluded that an organization employing plaintiff as a watchman would require a statement from plaintiff's doctor that it was safe for him to perform his duties.

### Hearing Examiner's Decision

Based upon the evidence presented to him, the hearing examiner concluded that plaintiff could no longer return to his former vocation as a longshoreman. However, he concluded that plaintiff could do sedentary work, that his impairment did not prevent him from engaging in any substantial activity and that plaintiff was not disabled within the meaning of the Social Security Act.

■ Section 205(g) of the Act, 42 U.S.C. § 405(g), which empowers this Court to affirm, modify or reverse the decision of the Secretary, provides that "[t]he finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *See also,* Franklin v. Secretary of HEW, 393 F.2d 640 (2d Cir. 1968); Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960); Brill v. Celebrezze, 232 F.Supp. 296 (E.D.N.Y.1964). The scope of my review is thus limited, for the court is not authorized to substitute its judgment for that of the administrative judgment.

"Such determinations will not be set aside by courts if there is evidence to support them. Even though, upon a consideration of all the evidence, a court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment." Swayne & Hoyt Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659 (1937).

*See also,* Brill v. Celebrezze, *supra;* Crooks v. Folsom, 156 F.Supp. 631, 635 (E.D.N.Y.1957).

■ The burden of proving disability rests upon the claimant. 42 U.S.C. § 423(d)(5); Gold v. Secretary of HEW, 463 F.2d 38 (2d Cir. 1972); Franklin v. Secretary of HEW, *supra;* Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960); Adams v. Flemming, *supra.* However, if the plaintiff can establish that he can not continue in his previous line of employment, the burden of going forward shifts to the examiner to establish that there are other jobs available to the plaintiff. Gray v. Finch, 427 F.2d 336 (6th Cir. 1970); Reyes Robles v. Finch, 409 F.2d 84 (1st Cir. 1969); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). The ultimate burden of proof, of course, is that of the plaintiff.

■ 42 U.S.C. § 423(d)(1)(A), provides that a three-fold requirement must be met in order to qualify the plaintiff for disability insurance benefits. First, the claimant must give evidence of a "medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months . . ." Second, there must be an "inability to engage in any substantial activity." And finally, it must be shown that this inability exists "by reason of" the impairment. A test employed in determining the inability to engage in any substantial gainful activity is what the claimant can do and what employment opportunities are available to the claimant. Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960); Brill v. Celebrezze, *supra.* The elements of proof to be considered in determining disability are (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints and (4) plaintiff's age, educational background and work history. Gold v. Secretary of HEW, 463 F.2d 38 (2d Cir. 1972); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Dibble v. Finch, 316 F.Supp. 1304 (W.D.Pa.1970).

■ The hearing examiner having determined that the plaintiff can no

longer work as a longshoreman, the burden shifted to the Secretary to go forward and produce evidence of substantial gainful work that exists in the national economy for a person of plaintiff's age, education, work experience and physical impairments. If the Secretary produces such evidence, the plaintiff has the overall burden of showing that his disability precludes any gainful employment. Meneses v. Secretary of HEW, 143 U.S.App.D.C. 81, 442 F.2d 803 (D.C.Cir. 1971).

■ Under 1968 amendments to the Social Security Act, the standard for establishing disability is a stringent one —the applicant must be unable to engage in any "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The standard is not the inability to be hired, but the complete inability to engage in substantial work. Thus, a court is precluded from considering whether the plaintiff would actually be hired, but must consider whether the plaintiff could perform any of the enumerated jobs, King v. Finch, 428 F. 2d 709 (5th Cir. 1970); Gentile v. Finch, 423 F.2d 244 (3d Cir. 1970); Wright v. Gardner, 403 F.2d 646 (7th Cir. 1968), regardless of whether a specific job vacancy exists. Trujillo v. Cohen, 304 F.Supp. 265 (D.Colo.1969), aff'd, 429 F.2d 1149 (10th Cir. 1970); Huffman v. Gardner, 292 F.Supp. 331 (D.Ore.1968).

"While such factors as whether the work he could do exists in his local area, or whether there are job openings, or whether he would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disabled under this definition. It is, and has been, the intent of the statute to provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside, to local hiring practices or employer preferences, or to the state of the local or national economy." 1967 U.S.Code Cong. & Admin.News, pp. 2834, 2882.

■ Although plaintiff was found to be disabled under the Longshoremen's and Harbor Workers' Compensation Act and although that finding is entitled to some weight in assessing the plaintiff's condition, it is not binding upon the Secretary. Skeels v. Richardson, 453 F.2d 882 (5th Cir. 1972); Vicars v. Gardner, 285 F.Supp. 527 (W.D.Va.1968).

■ In order to sustain the Secretary's burden of going forward, Dr. Cooper testified that there were jobs available which he believed plaintiff could perform, notably elevator operator, watchman, doorman and hand packager in a drug establishment. In selecting these jobs, the vocational expert relied on the *Dictionary of Occupational Titles*. This may be used if the vocational expert also relies on his own experiences and does not give undue weight to the Dictionary. Woods v. Finch, 428 F.2d 469 (3d Cir. 1970); Christopher v. Finch, 317 F.Supp. 1101 (E.D.Pa.1970), vacated, 452 F.2d 1237 (3d Cir. 1972). Exclusive reliance on the Dictionary has been condemned. Colwell v. Gardner, 386 F.2d 56 (6th Cir. 1967); Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967); Kelly v. Cohen, 293 F.Supp. 261 (W.D. Pa.1968). Dr. Cooper did testify that there were a sufficient number of the above types of jobs available in the metropolitan area. In so doing, however, Dr. Cooper assumed that plaintiff would use public transportation and could travel throughout the year. Dr. Wood, who had been treating plaintiff, disputed these assumptions. He testified that plaintiff could not use public transportation and that he should not travel during inclement weather. In selecting the above jobs, Dr. Cooper took into consideration the need to work in a clean envi-

**250**

ronment and considered the fact that he has placed individuals who suffer from bronchial asthma in jobs upon the advice of their doctors. It is apparent from Dr. Wood's testimony that he would not give his consent. Plaintiff amply demonstrated that he could not perform the jobs of watchman and elevator operator.

 In concluding that the plaintiff could perform sedentary work, the hearing examiner placed great emphasis on plaintiff's ability to drive a car. The mere fact that plaintiff can drive a car and is mobile does not establish that he can engage in substantial gainful activity. *See,* Gold v. Secretary of HEW, *supra;* Mullen v. Gardner, 256 F.Supp. 588 (E.D.N.Y.1966); Joki v. Flemming, 189 F.Supp. 365 (D.Mont.1960). The hearing examiner also placed greater emphasis on the evidence produced by Doctors Sternbach and Alexander (each of whom had examined the plaintiff only once) than that of Doctors Wood and Rafkin, plaintiff's treating physicians. The testimony and evidence of doctors who treated the plaintiff over substantial periods of time are entitled to more consideration than testimony of doctors who treated the plaintiff once. Claussell v. Secretary of HEW, 337 F.Supp. 717 (S.D.N.Y.1972); Teague v. Gardner, 281 F.Supp. 43 (E.D.Tenn.1968); Mullen v. Gardner, 256 F.Supp. 588 (E.D. N.Y.1966); Bates v. Celebrezze, 234 F. Supp. 349 (W.D.S.C.1964). However, the Supreme Court has held that:

"a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing . . . and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant . . ." Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971).

In evaluating the testimony of Doctors Alexander and Sternbach, the results of spirograms (tests measuring plaintiff's pulmonary functions) are significant. The spirogram performed by Dr. Sternbach indicated, before bronchodilators, that plaintiff's maximum voluntary ventilation (MVV) was 43.2 liters/minute and plaintiff's one second forced expiratory volume (FEV$_1$) was 1.5 liters. Dr. Alexander found plaintiff's FEV$_1$ to be about 1.1 liters. The Social Security Regulations list impairments for each of the major body systems. 20 C.F.R. § 404.1506 provides:

"(a) The Listing of Impairments describes, for each of the major body systems, impairments which—

(1) Are to a level of severity deemed sufficient to preclude an individual from engaging in any gainful activity . . . ."

The regulations then list the impairment of chronic obstructive airway disease for a person of plaintiff's height, 70 inches, as "spirometric evidence of airway obstruction demonstrated by MVV and FEV$_1$ both equal to, or less than . . . 45 liters/minute and 1.4 liters" respectively. 20 C.F.R. § 404.1526. Both the MVV and FEV$_1$ must be equal to or less than 45 liters/minute and 1.4 liters respectively to constitute impairments within the meaning of the Social Security Regulations. The MVV found by Dr. Sternbach was below that required for an impairment. However, Dr. Sternbach found the FEV$_1$ to be 1.5 liters, while Dr. Alexander found the FEV$_1$ to be about 1.1 liters, below that required for an impairment.

The administrative law judge made several findings which are not supported by the record. He found that "medical doctors say he can do sedentary work." Dr. Alexander did so find, except that this finding runs counter to the results of spirogram administered by Dr. Alexander and the Social Security Regulations, 20 C.F.R. §§ 404.1506 and 404. 1526. No other medical doctor testified that plaintiff could do sedentary work. The administrative law judge also found:

"5. The medical evidence of record does not reveal the same attendant

medical findings with respect to claimant's impairment as are recited in the Listings of Impairments in the Appendix to Subpart P of the regulations."

This is not entirely correct because the results of the spirograms differ with respect to plaintiff's $FEV_1$. Dr. Sternbach found it to be one-tenth above the minimum, while Dr. Alexander found it to be well below the minimum.

Plaintiff need not prove that he is unable to do any work, to satisfy the social security requirements but, rather, that he is unable to engage in any substantial gainful activity. Considering the medical data, expert medical opinions, subjective complaints and plaintiff's age, educational background and work history, this court finds that the Secretary's conclusions are not based on substantial evidence. The Government's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted.

This is an order.