Eustacia LOPEZ DIAZ, Plaintiff,
Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant, Appellee.

No. 77–1544.

United States Court of Appeals,
First Circuit.

Submitted June 9, 1978.

Decided Sept. 27, 1978.

Elba Canales De Mattina, Salvador Tio, Santurce, P. R., Luis Amauri Suarez Zayas, Hato Rey, P. R., Jose E. Colon Santana, Jose E. Fernandez Sein, Maria E. Pico, Lirio C. Torres Sepulveda, Santurce, P. R., Maria Dolores Fernos, Hato Rey, P. R., Ana Matanzo Vicens, San Juan, P. R., and Frances Diaz Medina, Bayamon, P. R., on brief for appellant.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R., William Kanter, Atty., Dept. of Justice, Washington, D. C., Borge Varmer, Regional Atty., and Barry J. Reiber, Asst. Regional Atty., Dept. of Health, Education and Welfare, New York City, on brief for appellee.

Before COFFIN, Chief Judge, CAMP-
BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

■ This is an appeal under 42 U.S.C. § 405(g) (1964) from the denial of a claimant's application for disability insurance benefits. The findings of the administrative law judge became the final determination of the Secretary and were affirmed by the district court. Mindful of our limited review in such cases, our analysis of the record and relevant provisions of the Social Security Act nonetheless leads us to the conclusion that the administrative law judge's failure to consider claimant's con-

tention that her physical disabilities rendered her unable to travel to and from a work place was error. We therefore remand this case for further consideration.

The record in this case consists of testimony of claimant and a vocational expert, various medical reports, and the findings of the administrative law judge. The claimant, a female, was 52 years of age at the time of the hearing. Her formal education apparently ceased after the fourth grade.[1] During 1973 and 1974 she was hospitalized twice, first for a cholecystectomy and then for repair of incisional and umbilical hernias and for an appendectomy. In addition, she was treated for a vesicle condition. The record indicates no continuing impairment from these problems. Her disability claim therefore rests on the condition of her feet and ankles, diagnosed as ankle synovitis and calcaneal spurs.[2]

The medical testimony does not speak with one voice. One of the doctors whose report appears in the record examined the claimant in July of 1974. He found that she had no difficulty in bending forward but demonstrated considerable difficulty squatting, kneeling, stooping, and ambulating. X-rays revealed no evidence of bone, joint, or soft tissue pathology. Another doctor examined the claimant six months later. He found her able to sit, stand, bend, reach, squat, stoop and kneel well. However, he noted a calcaneal spur on her left foot and described her ambulation as slow with short steps but without a limp. The record does show agreement that in an eight-hour workday, the claimant could walk or stand two or three hours and could sit for six or more hours.

Claimant testified at the hearing that "my feet used to swell up very, very much

and as I took a step, it would feel like I was being cut by glass underneath the foot. It was a piercing pain." She further stated that the pain forced her to walk on her toes, such action affecting her leg tendons and causing pain in her knee. She said that sitting relieved the pain. She testified that she was unable to wash and dress herself without her daughter's assistance, and that she spent most of the day lying and sitting down, never leaving her house except for doctor's visits or a very important errand. When asked if she had attempted to find work in the last five years, she responded that she would have to wait for and travel on several buses to another community and "since I can hardly walk, I just can't."

The findings of the administrative law judge, adopted by the Secretary, were that "[a]lthough ankle synovitis and calcaneal spurs have been diagnosed, these conditions do not prohibit the claimant from engaging in light and sedentary work which does not involve prolonged standing or walking." He further found, based on the sworn testimony of a vocational expert, that work appropriate to her physical condition and vocational background,[3] including jobs in the tobacco and garment industries, exists within the vicinity of the area where she currently resides. These findings are supported. There is substantial evidence in the record that the claimant would be able to perform light work upon arrival at the job site.

If error exists, it is the failure of the administrative law judge to address the claimant's contention that her physical impairments prevent her from transporting herself to and from a job. At the hearing, claimant's counsel emphasized:

1. The ALJ's findings specify the fourth grade, and documentation in the record supports that finding. But another document indicates the third grade, and the claimant testified at the hearing that she had completed the second grade.

2. These conditions are a membrane inflammation, usually accompanied by pain and swelling of the joint, and growths on the heels.

3. In the past claimant had worked as an unskilled factory worker in several industries. Subsequently she spent seven years working at home, washing and ironing for people, and then returned to a tobacco factory as a leaf packer for about nine years. She testified that this work involved standing and walking all day and that she stopped work because she could not walk.

"In order for her to carry on she has to transport herself and she has to come and go and that's where the impairment is . . . . [W]e must consider all the elements comprised in that person's work, not only the arrival of that person to a job at 8 o'clock and coming out at 5, but we must also consider the time from the minute she gets out of bed to the time she gets to work and she performs her job and her return home."

Although the administrative law judge questioned the claimant about the logistics of travelling from her home to areas where work was available and her physical capacity to travel and assured counsel that "[a]ll factors will be taken into consideration when I render my decision", no mention of this issue appears in his findings.[4] The question we must decide is whether the physical capacity to transport oneself to a job is relevant to a determination of "disability", as defined in 42 U.S.C. § 423(d)(1)(A). The question is one of first impression in this circuit, and our research has disclosed no treatment of the issue in other courts of appeals.

Our inquiry begins with the Social Security Amendments of 1967, enacted by Congress to restrict the expansive reading of the term "disability" that had become prevalent in the courts. Sen.Rep.No.744, 90th Cong., 1st Sess. (1967), *reprinted in* 1967 U.S.Code Cong. & Admin.News, pp. 2834, 2881.[5] One of Congress' express objections was:

"A narrowing of the geographic area in which the jobs the person can do must exist, by reversing the Department's denial in cases in which it has not been shown that jobs the claimant can do exist within a reasonable commuting distance of his home, rather than in the economy in general." *Id.* at 2881–82.

The intent to eliminate this narrowing is expressed clearly in the legislative history:

"While such factors as whether the work he could do exists in his local area, or whether there are job openings, or whether he would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disabled under this definition. *It is, and has been, the intent of the statute to provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside,* to local hiring practices or employer preferences, or to the state of the local or national economy." *Id.* at 2882 (emphasis not found in original).

Consequently, subsection (d) of 42 U.S.C. § 423 was enacted providing, in part, that:

4. As the court in *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), stated, "as fact finder [the examiner] has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all." *Id.* at 312.

Moreover, the administrative law judge's questions to the vocational expert were framed to consider only the availability of jobs performable by a person with claimant's vocational and on-the-job physical abilities. When pressed by claimant's attorney on cross-examination, the vocational expert replied:
"Well, I don't believe that residual functional capacity is involved with transportation problems. I believe I know what you are attempting to say to me, counselor, if I may. I believe you're trying to say can a person who has the impairments which the claimant claims, could travel to those places of work, is that what you're trying to say? Well, in that case I would have to say that on the basis of the claimant's testimony, the claimant's testimony, of course, would involve a serious handicap in terms of vocational accommodation that the claimant could not work. *But this was not included in the Judge's assumption. My response was to the Judge's assumption.*" (Emphasis not found in original.)

5. Since the enactment of the 1967 Amendments we have had numerous occasions to evaluate their impact on the determination of disability. We have recognized that disability is "a term of art", narrowly drawn, and distinguishable from the broader concept of employability. *Lopez v. Secretary of Health, Educ. & Welf.,* 512 F.2d 1155, 1157 (1st Cir. 1975); *see, e. g., Miranda v. Secretary of Health, Educ. & Welf.,* 514 F.2d 996, 998 (1st Cir. 1975); *Hernandez v. Weinberger,* 493 F.2d 1120, 1122 (1st Cir. 1974).

"an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives,* or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . ., 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis not found in original).

The Secretary describes the claimant's alleged incapacity to travel to and from work as an "irrelevancy", stating that "Congress clearly did not intend that differing decisions as to disability should occur because of geographic locations". While we agree with the Secretary's statement of congressional intent, as expressed in the Amendments and their legislative history, we do not believe that the Amendments dispose of this claimant's argument.

Congress, tightening the definition of disability, eliminated consideration of travel difficulties when those difficulties were extrinsic to the claimed disability; the length and expense of commuting and the resulting inconveniences were no longer to influence a disability determination. *Lafont v. Secretary, H.E.W.,* 363 F.Supp. 443, 444 (E.D.La.1973). A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience. Disability insurance is not available to fund his decision to live far from available jobs. *See Kuszewski v. Weinberger,* 368 F.Supp. 530, 532 (D.Kan.1973).

*Torske v. Richardson,* 484 F.2d 59 (9th Cir. 1973) involved an alleged disability squarely within the Amendments reach. In *Torske,* the claimant suffered from limitations on the use of her right arm but was found able to perform light work. The district court held, however, that the inclusion of an area 70 miles from the claimant's home as an available labor market was unreasonable. Citing the narrowing language of the 1967 Amendments, the Ninth Circuit reversed, reiterating that "the job area is not confined to the claimant's locality." *Id.* at 60.

When, however, the claimant asserts that his locomotive disabilities render it impossible, or extremely difficult, for him to physically move his body from home to work, the claim, it seems to us, is of a different nature. His "commuting problems" are no longer extrinsic to his disabilities; they are a direct consequence of them. Reading the Amendments to bar consideration of this claim renders irrelevant not the claimant's place of residence, as mandated by Congress, but instead, the disabilities themselves. We find nothing in the language of the statute or its legislative history that mandates, or even suggests, this anomalous interpretation.

In the case of a paraplegic, his inability to move himself to and from work is implicitly recognized by the social security regulations, in which paraplegia, being a "listed impairment", is deemed sufficient to preclude an individual from engaging in any gainful activity", 20 C.F.R. § 404.1506; *see* Appendix, Listing of Impairments, subpart P, Chapter III, at 1.09B. The presumption may be rebutted, for example, by evidence that the individual was in fact engaging in substantial gainful activity, 20 C.F.R. § 404.1502(a). The locomotive impairments that the claimant in this case suffers are of course far less severe than those of a paraplegic. Ankle synovitis and calcaneal spurs are not listed impairments and consequently cannot be. presumed to be disabling. The claimant's alleged incapacity to travel is not thereby made irrelevant, however. "Conditions which constitute neither a listed impairment nor the medical equivalent thereof likewise may be found disabling if they

do, in fact, prevent the individual from engaging in any substantial gainful activity". *Id.* at § 404.1502(b). The claimant's alleged incapacity to travel therefore must be "determined from all the facts of [this] case." *Id.* at § 404.1502(a).

Our view finds support in the one previous case to have addressed squarely the relevance of the physical incapacity to travel to and from work to a determination of disability. In *Clemmons v. Weinberger,* 416 F.Supp. 623 (W.D.Mo.1976), a district court reviewed the denial of benefits to a claimant suffering from "the presence of a left knee impairment, accompanied by degenerative arthritis, and traumatic arthritis affecting the right foot. Plaintiff testified as to pain in her entire left leg, which increases when she walks or stands, and difficulty in walking." *Id.* at 626. The court remanded to the Secretary for a further hearing because, among other reasons:

> "[N]either the vocational expert or the administrative law judge concerned themselves with the question of whether plaintiff's physical condition would preclude her from getting to and from any job she might be able to obtain. Surely this factor is significant to a determination of her ability to engage in gainful employment on a regular or sustained basis. . . ." [6] *Id.* (citations omitted).

We believe that a remand for a further hearing is likewise appropriate here to determine whether claimant's impairments indeed render her unable to travel to a job site. The record includes the claimant's and her counsel's repeated assertions that she could not travel, and the medical testimony concurs in her inability to stand and walk for protracted periods of time. Furthermore, when pressed by claimant's counsel, the vocational expert addressed claimant's alleged inability to travel:

> "I would have to say that on the basis of the claimant's testimony, the claimant's testimony, of course, would involve a serious handicap in terms of vocational accommodation that the claimant could not work. . . ."

This evidence should be considered by the fact-finder, any additional relevant testimony received and findings entered on claimant's physical capacity to travel to and from a job site.

The question of capacity to travel is complicated in this case by the distance between claimant's home and work appropriate for someone with her physical and vocational capabilities. Claimant's attorney stated that the claimant lives in the Quebrada Honda district of Puerto Rico, that she must walk 15 minutes to the road, travel by bus to San Lorenzo, and then transfer to another bus to the town of Caguas. In Caguas she must take yet another bus from the main square to factories located in other areas of the town. The attorney concluded that the claimant would spend "2 hours [each way] in the transportation oper-

---

**6.** Several other lower court cases make mention of the physical inability to travel but do not address directly its relevance to a disability claim. In *Robinson v. Richardson,* 360 F.Supp. 243 (E.D.N.Y.1973), the district court overturned the Secretary's denial of benefits to a claimant suffering from severe asthma and emphysema. It noted a doctor's testimony that "plaintiff could not use public transportation and that he should not travel during inclement weather." *Id.* at 249. In *Pate v. Richardson,* 330 F.Supp. 39 (S.D.Tex.1971), evidence was presented before the examiner that plaintiff was "physically unable to commute daily from his home to Houston, a distance of 40 to 50 miles" because of degenerative arthritis of the lumbar spine. The hearing examiner rejected the testimony, relying on evidence to the contrary in reaching his decision. *Id.* at 41.

We note at this point that appellant relies exclusively on 20 C.F.R. § 404.1524(c) to argue that the physical capacity to travel is relevant to a disability determination. This social security regulation, specifying the information that is to be included in medical evidence of physical or mental impairment, states in part that: "such evidence shall also describe the individual's capacity to perform significant functions such as the capacity to sit, stand, *or move about, travel,* handle objects, hear or speak, . . . ." (emphasis not found in original). We do not find that the regulation sheds light on the issue in this case. The above reference to movement and travel appears in the context of various on-the-job capacities and should be read in that context.

ation", and described her district as "one of the farthest districts in the region".

■ Clearly, the distance and inconvenience of this multi-step commute compound the claimant's locomotive disabilities. And it is equally clear that these individual considerations cannot enter into a finding of disability. *See* 42 U.S.C.A. § 423(d)(2)(A); 1967 U.S.Code Cong. & Admin.News, *supra* at 2881–82. Therefore, the inquiry must focus not on the actual claimant, residing two hours from available work, and forced by her particular circumstances to travel by foot and several busses, but rather on a hypothetical claimant, suffering from the same standing and walking impairments as this claimant, whose place of residence is unknown but reasonably close to the worksite, and who is free to choose a suitable form of conveyance from among the different means of transportation, public or private, that are normally available to the national population in travelling to and from work.[7] If the disabilities of the hypothetical claimant would not in and of themselves prevent him or her from travelling by some normally available means of transportation, either public or private, to "work which exists in the national economy", 42 U.S.C. § 423(d)(2)(A), then our actual claimant likewise cannot be deemed disabled on incapacity to travel grounds. This approach is in accord with the Congressional mandate that claimants with similar disabilities be treated with "uniformity and consistency throughout the Nation, without regard to where a particular individual may reside". 1967 U.S.Code Cong. & Admin. News, *supra,* at 2882. On the other hand, if the hypothetical claimant could not transport herself to work, utilizing some normal means of transportation, regardless of where she resides, then disability benefits are appropriate for the actual claimant. We note, as a caveat, that it will be an unusual case in which such a showing can be made.

The judgment of the district court is vacated. The case is returned to the district court with directions to remand to the Secretary for reconsideration consistent with this opinion.

---

7. It must be assumed that, except in extremely rare cases, everyone has to travel some distance, be it long or short, from home to work and such travel involves walking and climbing up at least a few steps.