In the

# United States Court of Appeals
### For the Seventh Circuit

No. 06-4083

FLORINE COSTELLO,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2952—**Elaine E. Bucklo**, *Judge.*

ARGUED JUNE 5, 2007—DECIDED AUGUST 23, 2007

Before EASTERBROOK, *Chief Judge*, and MANION and
WOOD, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Florine Costello visited her
local Social Security office in 1994 with a straightforward
question: from which of her two ex-husbands could she
collect the largest monthly benefit check? (Divorcees can
draw retirement benefits on their former spouses' earnings
records. 42 U.S.C. §402(b).) Based on the advice she
received, she applied for (and received) benefits for which,
it turns out, she was ineligible. The SSA eventually
discovered the error and demanded repayment of eight
years' benefits. Costello seeks to offset this amount by the
benefits she would have received had she applied under

the other ex-husband's account. An administrative law judge concluded that such an offset is unavailable because the situation does not fall within 42 U.S.C. §402's "misinformation" provision, which allows applications to be granted retroactively in some circumstances. After the Appeals Council declined Costello's request for review, she brought this suit, in which the district court granted summary judgment for the agency.

The facts are not in dispute. Florine Costello was married to Gilbert Costello for 30 years before they divorced in 1982. Five years later she married Leonard Ramsey. She began receiving Social Security benefits as Ramsey's spouse in 1992, but the following year she and Ramsey divorced. In January 1994 Costello and her adult daughter went to the SSA's office in Joliet, Illinois, to find out whether she could draw greater benefits as Costello's ex-wife or as Ramsey's. (These are the recollections of Costello and her daughter. There is no documentary evidence of the visit—such as a recording or contemporaneous notes—but the SSA has accepted Costello's version of events.) She told an SSA employee named Goerlitz, "I want to find out from which of my ex-husbands I can pull the most benefits." After a few moments he told Costello: "Stay with Ramsey. You can get the most from Ramsey."

Goerlitz was wrong. Costello and Ramsey had been married only six years, but 42 U.S.C. §402(b)(1)(G)(ii) provides that 10 years' marriage is the minimum to qualify under these circumstances. Thus Costello is ineligible for benefits as Ramsey's ex-wife. Given the length of her marriage to Gilbert Costello, however, she was eligible for benefits on his account once he reached age 62. All that was needed was an application—which Costello did not file at the time. The SSA discovered the error in 2002 and demanded that she return all benefits paid to her as Ramsey's ex-wife. Costello replied that she

should be able to offset the amount she owed by the amount the SSA would have paid her over the years had she applied for benefits on Gilbert Costello's account at the time she mistakenly applied as Ramsey's ex-wife. Gilbert Costello's earnings history apparently is not as good as Ramsey's, but it's close; if offset is allowed, the amount overpaid drops to only about $1,800.

Costello's offset argument rests on the "misinformation" provision of 42 U.S.C. §402 and the accompanying regulations. Subsection (j)(5) provides that:

> In any case in which it is determined to the satisfaction of the Commissioner of Social Security that an individual failed as of any date to apply for monthly insurance benefits under this subchapter by reason of misinformation provided to such individual by any officer or employee of the Social Security Administration relating to such individual's eligibility for benefits under this subchapter, such individual shall be deemed to have applied for such benefits on the later of—
>
> > (A) the date on which such misinformation was provided to such individual, or
> >
> > (B) the date on which such individual met all requirements for entitlement to such benefits (other than application therefor).

In short, if Costello failed to apply for Social Security benefits because she received misinformation, then the agency must backdate any subsequent application to the time when it would have been made, had the information been correct. Regulations flesh out the statutory requirements. See 20 C.F.R. §404.633(c):

> (2) Misinformation is information which we consider to be incorrect, misleading, or incomplete in view of the facts which you gave to the employee,

or of which the employee was aware or should have been aware, regarding your particular circumstances. . . . In addition, for us to find that the information you received was incomplete, the employee must have failed to provide you with the appropriate, additional information which he or she would be required to provide in carrying out his or her official duties.

. . .

(4) The misinformation must have been provided to you in response to a specific request by you to us for information about your eligibility for benefits . . . for which you were considering filing an application.

The district court held that the agency did not provide "misinformation" in 1994 because (1) the misinformation provisions apply only to requests for information about *eligibility* for benefits—and Costello asked about dollar amounts, not eligibility; and (2) the SSA employee did not know how long Costello's marriages had lasted and thus of her ineligibility for benefits on Ramsey's earnings record.

The first proposition is a quibble. The agency points out that the statute and regulations refer to questions about "eligibility". Because Costello didn't ask about eligibility using that word she loses, the agency maintains. Costello responds that an inquiry about the relative amounts of benefits necessarily implies the question whether one is eligible for those benefits in the first place.

Section 402(j)(5) speaks of "misinformation . . . relating to such individual's eligibility for benefits". Subsection (c)(4) of the accompanying regulation states, "The misinformation must have been provided to you in response to a specific request . . . for information about your eligibility

for benefits." But this emphasis on eligibility doesn't help the agency because you can't answer the "amount" question correctly without considering the "eligibility" question. In order to compare two streams of benefits, the SSA employee needed to consider the possibility that one set of benefits was zero. The correct answer to Costello's question was: "Your benefits would be greater under Gilbert Costello's account because you are entitled to nothing under Leonard Ramsey's account."

The agency would have us understand Costello's question as: "On the assumption that both Ramsey and Costello afford me benefits, which ex-husband provides the greatest dollar amount?" or as "Which ex-husband has the better earnings record?" If that had been the case, then the SSA would have a point. But that's not what Costello asked. Her question was, "From which of my ex-husbands can I pull the most benefits?" In order to "pull" any amount, Costello would have to be eligible. An earnings record is irrelevant if the applicant can't draw on it. The agency's position that Costello needed to ask *two* questions—one about eligibility and one about amount—is untenable because the latter question includes the former.

As for the second argument, it's true that the SSA employee didn't know the dates of Costello's marriages and divorces, but that's only because he didn't ask. (Costello didn't know enough to volunteer the information; her lack of legal knowledge is why she asked SSA.) The agency's position is that its employee was under no obligation to gather information that would be relevant to determining Costello's eligibility for benefits. The regulations define "misinformation" with reference to "facts which you gave the employee or of which the employee was aware or should have been aware" and speaks of "appropriate, additional information which [the employee] would be required to provide in carrying out his or her official duties." 20 C.F.R. §404.633(c)(2). Goerlitz "should have

been aware" of the length of Costello's marriages because he "should have" asked. The 10-year rule is precisely the sort of unintuitive, technical requirement that leads people to seek advice. While SSA employees need not ferret out potential claims for benefits—for example, by asking an applicant whether other members of the family might be eligible—once someone has indicated an intention to apply for benefits, an employee has a duty to work through the application calculus, and that includes asking obviously relevant questions. Goerlitz had to ask about the lengths of Costello's marriages, because that information was essential to answering her question. Costello didn't know what mattered; it was Goerlitz who decided to start (and end) with the earnings records rather than with the length of the marriages.

An example in the regulation contemplates asking necessary follow-up questions to establish eligibility. See §404.633(a), ex.2. In that example, an applicant is told that she is ineligible for disability benefits because she has fewer than 20 quarters of work experience. The SSA employee failed to ask how old the applicant is (the information had not been volunteered); had the employee done so, he would have known the applicant fit within an exception to the 20-quarter requirement for younger workers. Costello's situation is materially indistinguishable. It would have been simple enough for Goerlitz to ascertain how long her marriages had lasted. The divorce decrees were on the table in front of him.

The agency argues that this court's decision in *Smithback v. Sullivan*, 899 F.2d 698 (7th Cir. 1990), forecloses Costello's argument. While *Smithback* does not mention 42 U.S.C. §402(j)(5) (enacted a few months earlier) or the corresponding regulation (issued later), the agency insists that the holding is in harmony with the later misinformation regulations. In *Smithback* a 62-year-old called the SSA to ask about the reduction in retire-

ment benefits for filing prior to age 65. The employee with whom Smithback spoke told him that he would receive considerably less in benefits if he retired before age 65. Although the SSA employee was thinking in terms of *monthly* benefits, Smithback contended that he had been thinking in terms of *total lifetime* benefits. Smithback waited to apply for benefits but later regretted his decision and sought to have his application back-dated to his 62nd birthday. This court affirmed the agency's refusal to do so.

The SSA cites *Smithback* as though it stands for the proposition that the agency gets the benefit of the doubt when a potential applicant asks an ambiguous or poorly phrased question. That's not so. Smithback lost because the SSA employee gave the right answer: monthly benefits for those who waited to retire until age 65 were about 20% greater. The employee's interpretation of the question was the only one that made sense. Smithback said nothing that would have tipped off the SSA employee that he was really interested in maximizing the present discounted value of lifetime benefits. Even if he had, the question would be impossible to answer: the employee could not know how long Smithback would live or to what degree Smithback preferred consumption today compared to consumption in the future. The employee answered the only question it made sense to answer—and did so correctly. That was not the case here. The most sensible response to Costello's question would have been to determine, first, whether she was eligible for any benefits at all, and then to compare the amount (if any) she received from each ex-husband. Unlike Smithback's, Costello's was a well-defined problem with a straightforward answer. And unlike Smithback, Costello received the wrong answer.

The agency offers one additional argument: that the application for which one seeks a deemed filing date must be the very same one about which one was misinformed.

According to the agency, Costello's situation falls outside §402(j)(5) because she wants to backdate her application as Gilbert Costello's ex-wife, though the misinformation she received concerned Leonard Ramsey's account. It points to language in §402(j)(5) stating that when someone doesn't apply for benefits because of misinformation, then "such individual shall be deemed to have applied for *such* benefits" at an earlier date (emphasis added). We don't get it. Costello did not ask in 1994 about Ramsey's benefits; she asked about *her own* benefits as the ex-spouse of a retiree. The fact that she had two ex-husbands doesn't change the nature of the benefit she sought.

  Florine Costello's inquiry about the amount of benefits to which she was entitled falls within 42 U.S.C. §402(j)(5) and the regulations. The SSA has been collecting the $23,180 by withholding Costello's monthly social security payments. The record does not reveal the current balance of accounts between the agency and Costello, so on remand the district court must determine (1) the date on which Costello is deemed to have applied for benefits as Gilbert Costello's ex-wife, and (2) the amount that the SSA now owes Costello (or vice versa).

                                        REVERSED AND REMANDED

A true Copy:

        Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*