RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0092p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

BROOKE TASKILA,

                    *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant-Appellee.*

No. 15-2224

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-12674—Nancy G. Edmunds, District Judge.

Decided and Filed: April 15, 2016

Before: SUTTON and GRIFFIN, Circuit Judges; OLIVER, District Judge.[*]

───────────────

**COUNSEL**

**ON BRIEF:** Joshua L. Moore, Detroit, Michigan, for Appellant. John J. Engel, SOCIAL SECURITY ADMINISTRATION, Boston, Massachusetts, for Appellee.

───────────────

**OPINION**

───────────────

SUTTON, Circuit Judge. An administrative law judge denied Brooke Taskila's request for disability benefits after the ALJ determined that she could perform a significant number of jobs in the national economy. The district court held that substantial evidence supports this decision, and so do we.

---

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

Taskila, now thirty-seven, has faced a number of health issues. She was involved in several serious car accidents, crashing into a ditch in 1996, a tree in 2006, and a deer in 2010. On top of that, she underwent successful treatment in 2011 for a mass in her breast and sought treatment for knee pain not long after. All of this has taken a toll on her health. Taken together, she claims, the injuries have led to unremitting pain in her neck and back, to anxiety and depression, to memory problems, to incontinence, to carpal tunnel syndrome, to an inability to work.

Taskila sought Social Security disability insurance and supplemental security income. An initial disability examiner denied her applications. After a hearing, an ALJ did the same. The appeals council denied review, making the ALJ's decision the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 & n.2 (2000). The district court rejected Taskila's petition for review of the ALJ's decision.

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).

To establish eligibility for disability benefits under the Social Security Act, Taskila had to show that she could not "engage in any substantial gainful activity" due to a long-lasting "impairment." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Barnhart v. Walton*, 535 U.S. 212, 217 (2002). The Social Security Administration processes applications for relief by asking five questions: (1) Does the claimant show she is not engaged in "substantial gainful activity"? (2) Does the claimant have a severe impairment? (3) Does the impairment meet any one of the items on a "list of impairments presumed severe enough to render one disabled"? (4) Can the claimant perform her past jobs? (5) Can the claimant perform other jobs that exist in significant numbers in the national economy? *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *see* 20 C.F.R. §§ 404.1520, 416.920.

Taskila made it through the first four inquiries but failed the fifth. The case comes down to whether Taskila could perform "any . . . kind of substantial gainful work which exists in the national economy" that is consistent with Taskila's "age, education, and work experience."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "[W]ork which exists in the national economy," the statute clarifies, "means work which exists in significant numbers either in the region where [Taskila] lives or in several regions of the country." *Id.*

Whether a claimant's limitations allow her to perform other work is "left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Among the criteria that may inform this determination are the extent of a "claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Id.*

Taskila testified that she could not complete several basic tasks of daily living, relying instead on her family and roommate to handle them. She did little during the day, she said, had practically no social life or hobbies, and had fallen behind in her school work at the University of Michigan, where she is a student. Documentary evidence, such as medical reports, supported the existence of some ongoing medical limitations. But she relied primarily on her own testimony to show what she could and could not do each day.

The ALJ did not find her testimony credible with respect to these limitations in daily activity based on the following evidence. In 2011, Taskila told her doctor she could perform daily activities and walk without difficulty for forty-five minutes. An evaluator determined around the same time that Taskila was "generally functioning pretty well." R. 9-2 at 20. The evaluator noted that Taskila maintained a B average in University of Michigan coursework, "g[ot] together" with "friends," and had several interests. R. 9-7 at 71. "[T]he claimant's allegations," the ALJ concluded, "are out of proportion with the evidence presented in this case." R. 9-2 at 22. That evidence gave "a physical basis for her complaints of pain" and supported "some functional limitations" but showed Taskila could "perform[] a modified range of sedentary, unskilled work." *Id.*

Based on his assessment of Taskila's medical limitations and remaining capacity to work, the ALJ relied on a vocational expert's testimony to determine the kinds of jobs that Taskila

could perform.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e).  The expert testified that someone with Taskila's limitations could do at least two jobs:  "callout operator" and "system surveillance monitor."  R. 9-2 at 65.  Those two jobs, he concluded, accounted for 200 positions in Michigan, where Taskila was living, and 6000 nationally.  The ALJ found this testimony credible and determined that, all things considered, Taskila could perform "work that exists in significant numbers in the national economy."  *Id.* at 24.

Substantial evidence review comes to this:  Did the ALJ use "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"?  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The above analysis satisfies this modest standard, one that puts a premium on whether the ALJ asked the right questions and provided reasonable answers, not on whether we would have given the same answers.  Taskila in short did not meet her burden of establishing eligibility for disability benefits.

Taskila responds that 6000 jobs nationwide does not amount to "significant numbers" of available jobs.  But caselaw, here and elsewhere, cuts the other way.  Six thousand jobs in the United States fits comfortably within what this court and others have deemed "significant."  *See, e.g.*, *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (2000 jobs); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (collecting cases to conclude "it appears to be well-established that 1,000 jobs is a significant number"); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1266 jobs).

The deeper flaw in this argument is that it tries to transform the significant-numbers inquiry from a fact question reviewed for substantial evidence into a legal question reviewed as a matter of statutory interpretation.  *See Smith*, 482 F.3d at 876.  The evolution of the Social Security Act shows why it is a fact question.

Ever since Congress first provided for disability benefits in 1956, it has made them available only to those who are unable "to engage in any substantial gainful activity" due to an "impairment."  Social Security Amendments of 1956, Pub. L. No. 84-880, sec. 103(a), § 223(c)(2), 70 Stat. 807, 815.  Taking their cues from an opinion by Judge Friendly, courts at

first generally interpreted this language to require that, if a claimant showed he could not do his past job, he was disabled unless the government proved he "could *in fact* obtain substantial gainful employment" near home. *Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960) (emphasis added); *see also Hall v. Flemming*, 289 F.2d 290, 291 (6th Cir. 1961). This claimant-specific inquiry triggered substantial evidence review. *See Hall v. Flemming*, 289 F.2d at 291; *Kerner*, 283 F.2d at 921.

Congress rejected this approach—in part. It clarified that "substantial gainful employment" refers to "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country," "*regardless of* whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Social Security Amendments of 1967, Pub. L. No. 90-248, sec. 158(b), § 223(d)(2)(A), 81 Stat. 821, 868 (1968) (emphasis added); *see Liskowitz*, 559 F.3d at 742 n.5. This language survives today. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "Disability insurance," we have since explained, "is not available to fund [a claimant's] decision to live far from his job." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (quotation omitted).

While the frame of reference has changed, the standard of review has not. The current inquiry—focused on nationwide jobs, not just jobs in the claimant's locale—is no less claimant-specific than the one Judge Friendly adopted. Whether a claimant can perform "significant numbers" of jobs nationally is merely part of the overall question of whether she can "engage in any substantial gainful activity" despite her limitations. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3). It is impossible to say she can—and thus impossible to determine the number of jobs that is "significant" enough—without taking into account her individual circumstances.

Consider three claimants, each with medical limitations that prevent her from doing anything other than sedentary work. Consider also that, for the second, her limitations prevent her from driving or working at night and that, for the third, her limitations prevent her from working more than part-time. An ALJ must consider these "intrinsic" effects because they prevent the claimant from accessing certain jobs in the local or national economy. *Harmon*, 168 F.3d at 292; *see also Lopez Diaz v. Sec'y of Health, Educ. & Welfare*, 585 F.2d 1137, 1140–

42 (1st Cir. 1978).   Whereas one of these hypothetical individuals may be able to fill any sedentary job, the second may need a day-shift sedentary job, and the third may need two part-time sedentary jobs, each with flexible hours.   What is "significant" enough to show each of these claimants can still work varies widely and thus will depend on individual circumstances.

That an ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs "should consider many criteria in determining whether work exists in significant numbers." *Hall v. Bowen*, 837 F.2d at 275.   It is why we have said "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number." *Id.*   And it is why substantial evidence review applies. *See id.*; *see also* 42 U.S.C. § 405(g).   Under that standard, the ALJ did not commit a reversible error.   For substantial evidence supports the conclusion that Taskila could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000).

Taskila's other arguments fare no better.   *Mackins v. Astrue*, a district court case, does little for her cause.   655 F. Supp. 2d 770 (W.D. Ky. 2009).   *Mackins* held that 60,000 jobs nationally did not constitute significant numbers.   *Id.* at 773.   It did so, however, because it doubted that the occupation for which the ALJ thought the claimant was qualified was consistent with the claimant's functional limitations.   *Id.* at 778; *cf. Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012).   *Mackins* also doubted whether, in view of changes in the economy, 60,000 jobs even existed within the identified occupation.   655 F. Supp. 2d at 773; *cf. Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014).   Neither criticism applies here, and Taskila does not argue otherwise.

Taskila also contends that the ALJ violated the agency's procedures.   He did not.   The Social Security Administration publishes an "internal manual[]" for its employees, the Program Operations Manual System (often called POMS).   *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 618 n.4 (6th Cir. 2010).   It instructs officials to cite "three occupations" that a claimant can perform to support a finding that the claimant is not disabled.   POMS § DI 25025.030, Appellate R. 12-2 at 2.   The ALJ in this case pointed to two.   The manual, however, allows ALJs to "cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer

than three occupation(s)." *Id.*; *see also* 20 C.F.R. §§ 404.1566(b), 416.966(b). That is just what the ALJ did.

For these reasons, we affirm.