RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

PAULA S. LINDEN,

     *Plaintiff-Appellant*,

  *v.*

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant-Appellee*.

No. 24-1762

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-10969—Elizabeth Ann Stafford, Magistrate Judge.

Decided and Filed:  March 17, 2025

Before:  THAPAR, BUSH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Elizabeth L. Luckenbach, Alison F. Duffy, DICKINSON WRIGHT PLLC, Troy, Michigan, for Appellant.  Stacy A. Morgan, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge.  Paula Linden filed for Social Security benefits a few years before she reached her full retirement age.  Had she waited to file until she reached the full retirement age, she would be receiving bigger monthly checks than she currently receives.  Now, Linden claims that she filed early only because the Social Security Administration falsely told her that filing early wouldn't cause her to receive smaller checks.  Thus, she wants the agency to

increase her monthly pay to the amount she would have received if she had waited to file. Because the statutory scheme doesn't allow for that result, we affirm.

I.

In September 2014, then-62-year-old Paula S. Linden completed an online application for Social Security benefits. Because Linden's full retirement age was 66, her decision to retire at 62 meant she was applying early. Thus, she would receive a smaller check each month compared to the benefits she would receive had she applied at age 66. This scheme reflects a basic logic: an average 62-year-old lives for more years and thus collects more monthly checks than the average 66-year-old. So, the Social Security Administration ("SSA") gives people who start drawing funds early a smaller amount in each payment, with the understanding that the total amount given to the average retiree balances out over the course of their lives.

Under this framework, Linden started to receive Social Security benefits in November 2014. And she collected five years' worth of benefits with no complaint.

But in 2020, Linden notified the SSA that her 2014 application was based on a fundamental misunderstanding. She said she applied for Social Security because she (wrongly) thought that if she applied at 62, her birth date and her husband's independent decision to defer his own Social Security would exempt her from the general rule that an early application yields smaller checks.

Linden first formed this impression after a friend told her about this alleged windfall. But she also blamed the SSA. She claimed that, after completing an online application, she spoke with agency staff who told her that she'd receive a 66-year-old's payment as a "special" payment, despite being just 62. Linden argued that she filed her application based on this misrepresentation. And she pointed to a statutory provision called the "misinformation provision," which says that if the government caused someone to fail to file based on misinformation, the claimant would be entitled to a higher benefit payment. 42 U.S.C. § 402(j)(5). So Linden requested that the agency retroactively set the date of her application to her 66th birthday, which would give her a higher monthly benefit.

The SSA saw things differently. It denied her request, both on initial review and on reconsideration. And when Linden sought and obtained a hearing, an Administrative Law Judge (ALJ) ruled that she couldn't recover. The ALJ cited 20 U.S.C. § 402(j)(5), which says that individuals can recover benefits if they "fail" to apply based on misinformation from an agency. Because Linden applied for benefits, however, the ALJ decided that the statute didn't cover her claim. What's more, the ALJ also found that there wasn't sufficient evidence to show that Linden received misinformation from the SSA in the first place. The agency's Appeals Council denied Linden's request for review.

Linden then turned to the courts. She filed a complaint that challenged the ALJ's unfavorable decision. After the parties agreed to have a magistrate judge adjudicate this dispute, the magistrate judge issued an order granting the agency's motion for summary judgment and denying Linden's motion for the same. Linden appealed.

II.

A.

On appeal of a district court's review of an ALJ decision, we ask whether the ALJ applied the correct legal standard and supported his factual findings with substantial evidence. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 903 (6th Cir. 2016). We review the ALJ's legal rulings, including his interpretation of relevant laws and regulations, de novo. *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018). But if there was substantial evidence to support the ALJ's factual finding, that ruling is conclusive. 42 U.S.C. § 405(g).

B.

This case hinges on the Social Security Act's "misinformation provision." 42 U.S.C. § 402(j)(5). The statute provides a remedy for an individual who "failed as of any date to apply" for Social Security benefits "by reason of misinformation" provided by an SSA employee. *Id.* As a remedy for an individual's failure to file, the agency will treat the individual as though he *did* file on one of two dates, whichever is later: (1) the date on which the individual

received the misinformation, or (2) the date on which the individual became entitled to benefits. *Id.*

The plain text of § 402(j)(5) precludes Linden's recovery. It applies only to individuals who "failed as of any date to apply" for benefits.

What does that mean? Start with the beginning and end of the phrase—"failed . . . to apply." Right off the bat, that language forecloses Linden's arguments. Linden submitted an online application for retirement benefits and chose to have her benefits begin in November 2014. Thus, she did not "fail" to file because of misinformation. Next, consider the phrase "as of any date." This provision adds a temporal requirement to the filer's action. It protects individuals who fail to file *at all* after receiving misinformation. Here, because Linden filed an application, she didn't "fail as of any date" to apply for benefits.

The agency's own regulations support this natural reading of the text. The agency guidelines explain that if an employee gave "misinformation" that "caused [a person] not to file an application at that time," the SSA could "establish an earlier filing date." 20 C.F.R. § 404.633(a). Of course, the agency's interpretation of statutes aren't controlling, but they are helpful. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944). They "constitute a body of experience and informed judgement" that courts can use for guidance. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (quoting *Skidmore*, 323 U.S. at 140). And here, the regulations correspond with the statutory language—the misinformation provision applies when a beneficiary received incorrect information that caused them not to file an application. Linden did file an application at the time she received the alleged misinformation.

The misinformation statute and regulation also set forth a specific remedial scheme that supports our plain text reading. If the SSA finds that a party failed to apply for benefits because of agency misinformation, the agency will deem the individual to have applied on the later of: (1) the date on which the individual received the misinformation; or (2) the date on which the individual became entitled to benefits. 42 U.S.C. § 402(j)(5); 20 C.F.R. § 404.633(b)(1).

Linden satisfies (1), assuming she received misinformation. But she argues that the agency should deem her to have filed under (2)—that is, on the date when she met all the

requirements for entitlement to her benefits.  To Linden, that date is her 66th birthday.  But the ALJ didn't err when it found that the most relevant date was when Linden turned 62—the date that she was entitled to Social Security benefits.  Thus, the statute does not provide Linden with the remedy she requests.  This remedial scheme reinforces our plain text reading—the remedy that Linden requests simply falls outside the statute's sweep.

In response, Linden invokes the plain text, appeals to precedent, and cites agency guidance.  But her arguments fail.

Starting with the text, Linden argues that her situation falls within the statute (and regulation) because she failed to apply when she turned 66.  Thus, she claims that the misinformation caused her to "fail[] to <u>timely</u> apply for benefits at age 66."  Reply Br. at 5 (emphasis in original).  But that argument fails for a few reasons.  First, Linden did timely apply for benefits when she turned 62.  Second, it's attempting to add the word "timely" into a statute that only discusses whether one "failed to file" at all.  And we can't add words to a statute. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020).  Instead, we have to interpret the text as written, which applies whether someone failed to file—not whether they "timely" applied for benefits.  Third, Linden did file her application—and thus didn't fail to file.  And fourth, Linden's reading would lead to a strange result: an applicant who files based on alleged misinformation can always point to another date on which she didn't file.  After all, Linden could just as easily argue that she shouldn't file at 66, as she might receive a larger monthly check if she deferred her retirement age to 70.  Thus, Linden's reading would eviscerate the requirement that the individual "failed . . . to apply" for benefits.  What's more, her reading runs into the persuasive regulatory language saying what matters is whether an applicant filed when she received the alleged misinformation.  If not, there's recourse.  But Linden did file—so her plain text arguments fall short.

Next, Linden turns to caselaw.  She cites one case to support her reading of the misinformation provision:  *Costello v. Astrue*, a Seventh Circuit opinion about the same provision.  499 F.3d 648 (7th Cir. 2007).  There, a twice-married applicant knew that divorcees could draw retirement benefits from a former spouse's earnings records.  *Id.* at 649.  So the applicant asked the SSA to advise her from which of her two ex-husbands she could collect the

largest monthly benefits check. *Id.* The SSA told her to file under one husband, but it turned out the couple hadn't been married long enough to qualify. *Id.* at 649–50. So after paying the applicant for eight years, the SSA demanded repayment. *Id.* at 649. The applicant sued, saying the SSA's misinformation caused her to fail to file under the correct husband. *Id.* at 650. The Seventh Circuit agreed, explaining that because misinformation caused her to fail to file under the correct ex-husband, she was entitled to relief. *Id.* at 652.

But Linden's reliance on *Costello* is unconvincing. It's distinguishable both on the facts and on the law. Starting with the facts, *Costello* dealt with an applicant who failed to file a particular application (one for the correct husband) when she received misinformation. *Id.* And her submission for the wrong ex-husband was invalid—thus, she failed to file a valid benefit application at all. *Id.* at 649–50. Here, on the other hand, Linden filed a valid application for Social Security at age 62. Thus, Linden's case is different from the facts in *Costello*.

Next, consider the law. *Costello* doesn't set out the broad, atextual principle that Linden asserts—that the misinformation provision can apply even though an applicant filed a claim. Indeed, she doesn't cite any language from *Costello* establishing such a holding. And no court has cited or read *Costello* this way. Thus, *Costello* doesn't support the proposition that the misinformation provision applies to Linden's case.

Finally, Linden turns to agency guidance. She cites the SSA's Program Operations Manual System (POMS), which explains that the misinformation provision in § 402(j) provides relief "to claimants who lost benefits because they failed to file an application timely due to misinformation given by an SSA employee." POMS GN 00204.008. Linden relies on the word "timely" to argue that the statute covers her even though she did file an application—she just didn't file it at the desired time.

But the Program Operations Manual System doesn't help Linden. For one, the word "timely" simply suggests that the application is submitted by a deadline. That's precisely what Linden did. What's more, even if the Manual did help Linden, it wouldn't be able to override the plain text of a statute or regulation. *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th. Cir. 1989). All told, the Manual doesn't support Linden's claims.

At bottom, Linden objects to the logic underlying the Social Security's misinformation remediation scheme.  The scheme follows a simple principle.  If the government misleads a worker into thinking they can't file, the government is stiffing them out of a number of monthly payments—funds that it owes the worker after decades of paying.  So it allows the worker to recover for those payments they lost.  But when a person files at 62, he's expected to collect the same aggregate amount as someone who files later:  he gets more checks with smaller figures rather than fewer checks with bigger figures.  By operating as it does, the misinformation provision reflects a sound logic—it allows someone who missed payments to get the money he's owed, while preventing double recovery for someone who did receive the full amount he's owed.

Thus, Linden's arguments about the misinformation provision fail.

C.

Next, Linden says that there wasn't enough evidence supporting the ALJ's conclusion that there was not misinformation in the first place.  However, we don't need to consider whether there was misinformation.  Since Linden did file for Social Security benefits, the presence or absence of misinformation would not change our result.

*        *        *

Because Linden's claims fail, we affirm.